UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
5:03CV49-3-V
(5:98CR289-V)

| | |
|---|---|
| **TERRY KERMIT JOHNSON,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, Or Correct Sentence under 28 U.S.C. § 2255, (Document No. 1); the Government's Answer to Petitioner's Motion and Motion for Summary Judgment (Document No. 3), and "Petitioner's Response to the Government's Answer to Petitioner's 28 U.S.C. § 2255 Motion and Motion for Summary Judgement"(Document No. 8.) For the reasons stated herein, the Government's Motion for Summary Judgment will be granted, and the Petitioner's Motion to Vacate will be denied and dismissed.

### 1. FACTUAL AND PROCEDURAL BACKGROUND

A review of the record reveals that on July 2, 2001 Judge Malcolm Howard sentenced Petitioner to a term of imprisonment of 120 months for possession of cocaine with intent to distribute following Petitioner's third jury trial.[1] The Fourth Circuit, in an unpublished opinion, affirmed

---

[1] Petitioner's first trial began on July 14, 1999. On July 16, 1999 this Court declared a mistrial. On April 10, 2000 a second trial began as to Petitioner. On April 17, 2000 this Court declared a mistrial. On January 18, 2001, this Court issued an Order, on its own motion, transferring the case to Judge Malcolm Howard. Petitioner was again tried on January 29, 2001

1

Petitioner's sentence on March 20, 2002. Petitioner filed a certiorari petition in the Supreme Court on June 14, 2002. The Supreme Court denied certiorari on October 17, 2002.

On April 18, 2003, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence alleging that his trial counsel was ineffective for: 1) failing to object to the judge's decision to declare a mistrial following his second trial; 2) for failing to raise a double jeopardy challenge at his third trial; 3) for failing to object to erroneous information in Petitioner's pre-sentence report; and 4) for failing to argue that Petitioner qualified for the safety valve provision set forth in 18 U.S.C. § 3553.[2]

## II. STANDARD OF REVIEW

Petitioner's contention that he received ineffective assistance of counsel is governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, and that there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 856 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields 956 F.2d at 1297. It petitioner fails to meet this burden, a "reviewing

---

before the Honorable Malcolm Howard and on February 2, 2001, the jury returned a verdict of not guilty as to Counts one, six and seven of the Second Superseding Indictment and a guilty verdict as to Count eight of the Second Superseding Indictment

[2] The Court notes since the time that Petitioner filed his Motion to Vacate, Petitioner has filed several motions to amend his Motion to Vacate, each of which was denied by this Court. (See Documents 11, 13 and 18.)

2

court need not consider the performance prong. Id. at 1290.

## III. Analysis

### A. Defense Counsel Michael Grace's Failure to Object to the Trial Judge's Declaration of a Mistrial

Petitioner's first claim of ineffective assistance of counsel is that his attorney, Michael Grace, failed to object to the Court's declaration of a mistrial following his second trial.

A review of the trial transcript reveals that after approximately three hours of deliberations, including a question by the jury,[3] and this Court's delivery of an Allen[4] charge following a second question[5], the jury informed the Court that it had reached a verdict on all counts. The clerk published the verdict, which indicated that the defendant was guilty of counts six, seven and eight of the Bill

---

[3] The note from the jury read: "We the jury of the case United States of America versus Terry Kermit Johnson, would like to watch the video of the drug deal buy and trade or sale all along with Terry Kermit's testimony." (Verdict Transcript at 3.) The Court instructed the jury that as to the latter portion of their request, they would have to rely on their best recollection as to the testimony of the defendant. The Court allowed the jury to watch the video they requested.

[4] Allen v. United States, 164 U.S. 492 (1896).

[5] Although the specific question was not read into the record, a review of the transcript reveals that the question indicated that the jurors reached a stalemate in their deliberations. The Court discussed the note with counsel and decided to instruct the jury in accordance with Allen v. United States, as to their duty to deliberate. Specifically the Court instructed; "It's your duty as jurors to talk with one another and to deliberate in the jury room. You should try to reach an agreement if you can. Each of you must decide the case for yourself, but only after consideration of the evidence with the other members of the jury. While this is going on, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up your honest belief solely because the others think differently or merely to get the case over with. In a very real way, you are judges, judges of the facts. Your only interest is to determine whether the government has proved the defendant guilty beyond a reasonable doubt as to the various counts in the indictment. With that instruction, I appreciate your patience with the court, but I would ask you to proceed and see what you may find." (Verdict Transcript at 10.)

of Indictment. When the jury was polled, however, juror number one indicated that she wanted the other jurors polled first. After the other jurors were polled and indicated that the verdict read by the clerk was their verdict, the Court inquired of juror number one whether she would prefer further deliberations or whether the verdict read by the clerk remains her verdict. In response Juror number one stated "I don't agree with it" and then "[b]ut I voted anyway." (Transcript of the Verdict, April 17, 2000 at 14.) This Court then declared a mistrial and thanked and dismissed the jury. Neither the attorney for the Defendant nor the attorney for the United States objected. At the conclusion of the proceeding, after the jury had been dismissed, the Court inquired if either lawyer had anything for the Court. Neither responded.

The Fourth Circuit has applied the "manifest necessity" standard to cases in which the trial court has determined that a mistrial is necessary. The trial court's determination that a mistrial is manifestly necessity is entitled to great deference. Sanders v. Easley, 230 F.3d 679 (2000).

In the instant case, this Court's decision to grant a mistrial was well supported by the record. The Court's decision to grant a mistrial was prompted by the following facts: (1) the jury had already been given an Allen charge in response to a note indicating they were deadlocked; (2) the jury represented to the Court that it had reached a unanimous verdict; and (3) when the Court polled the jury, juror number one indicated that jury's written verdict was not her verdict.

Under the above circumstances, the Court was well within its discretion to declare a mistrial. As the Fourth Circuit noted in Gilliam v. Foster, 75 F.3d 881, 895 (4th Cir. 1996):

> And while manifest necessity for a mistrial does not require that a mistrial be "necessary" in the strictest sense of the word, it does require a high degree of necessity. Arizona v. Washington, 434 U.S. at 506, 98 S.Ct. at 831. Perhaps the clearest example of a situation in which manifest necessity exists for a mistrial is when a jury is unable to reach a verdict. Id. at 509, 98 S.Ct. at 832. At the other extreme are situations in which a

4

prosecuting attorney seeks mistrial in order to have additional time to marshal evidence to strengthen the case against the defendant. Id. at 508, 98 S.Ct. at 831-32. Between these two extremes exists a spectrum of trial errors and other difficulties, some creating manifest necessity for a mistrial and others falling far short of justifying a mistrial. See Id. at 510, 98 S.Ct. at 832-33.

It is well settled that the jury's failure to agree on a verdict is an instance of "manifest necessity." United States v. Perez, 22 U.S. 579,580 (1824); Richardson v. United States, 468 U.S. 317, 323-24 (1984).

There are many reasons which support Attorney Grace's decision not to oppose a mistrial. Those that come to mind are: first, this was Petitioner's second mistrial, and the United States Attorney's Office generally does not try a case more than twice. Mr. Grace could have well assumed that a third trial was unlikely. Therefore, a mistrial could have resulted in a subsequent dismissal of the case by the government.

Furthermore, from the polling of the jury, Mr. Grace knew that eleven of the twelve jurors had publically expressed their belief that the he was guilty of the Counts with which he was charged. Only one juror disagreed. Had Mr. Grace insisted that the jury resume their deliberations, he ran the risk that the other eleven jurors would convince the "hold-out" juror that Mr. Johnson was in fact guilty. This would have resulted in Defendant's immediate conviction.

Petitioner has simply not established that his attorney's performance was deficient as required under the Strickland test. Additionally, Defendant claims that this Court violated Federal Rule of Criminal Procedure 26.3 by failing to give the parties an opportunity to comment and to suggest alternatives to a mistrial.

However, in United States v. Canady, 142 Fed.Appx. 133 (4th Cir. 2005), the Fourth Circuit held that while the district court did not specifically ask the parties to state their positions prior to

declaring a mistrial, the court complied with the purpose of Rule 26.3 when it previously asked the parties how to deal with the jury's deadlock. Here, when the jury send back their second question indicating that they were deadlocked, the Court showed the parties the note and asked how counsel would like to handle the situation. The government asked for an Allen charge. Defense counsel asked the Court to inquire how resolute the jury felt and stated that if they were resolute, he saw no need for the Allen charge at all.[6] (Verdict Transcript at 6.) Mr. Grace then asked the Court to be heard on his concerns regarding an Allen charge, which the Court allowed. Mr. Grace explained that his concern was that in his experience he had never heard language of an Allen charge which did not sounds like a directive to the jury to go back and reach a guilty verdict. He also expressed concern that if an Allen charge were given that it be clear that it applied to all counts of the Bill of Indictment.[7]

After hearing argument from Mr. Grace, the Court decided to give the Allen charge but agreed to tailor the instruction to address Mr. Grace's concern that the Allen charge apply to all counts of the Indictment. Therefore, like the Canady case, this Court did consult with counsel regarding the jury's apparent deadlock even though the Court declared a mistrial without specifically allowing the parties to comment. Moreover, Mr. Grace by making objection to the Allen charge and instead asking that the Court inquire how resolute the jury was (and if resolute not to give an Allen charge at all) indicates that Mr. Grace was asking for a mistrial instead of the Court allowing the jury to deliberate further. Petitioner has not raised the wisdom of counsel's objection to the Allen charge in this Motion. Therefore, Petitioner actually got what his counsel was asking for - - a mistrial.

---

[6] Presumably, if Mr. Grace saw no reason for an Allen charge, he was asking the Court to declare a mistrial at that point in time.

[7] The note from the jury indicated that the jury may have already reached a verdict on one count and were "deadlocked" as to the remaining counts.

However, the Court declared the mistrial thirty- two minutes after delivering the Allen charge. (Verdict Transcript 8-12.)

Furthermore, even if this Court committed error by failing to comply with Rule 26.3, Petitioner cannot establish that the error affected his substantial rights, because this Court's determination that the jury was deadlocked justified its declaration of a mistrial. See United States v. Olana, 507 U.S. 725, 734 (1993); United States v. See, 505 F.2d 845, 851-52 (9th Cir. 1975). In fact, in United States v. Avnaim, 211 F.3d 1275 (9th Cir. 2000), the Ninth Circuit stated that even if the court committed error by violating Rule 26.3, defendant could not demonstrate that the error affected his substantial rights because the outcome would have been the same. In other words, even if the court had complied with Rule 26.3 and defendant had objected to the mistrial and offered alternatives, the court's finding that the jury was deadlocked still would have justified its declaration of a mistrial.

Mr. Grace was not ineffective for failing to object to this Court's decision to grant a mistrial. Petitioner has not established either prong of the Strickland test, therefore, this claim of ineffective assistance of counsel is denied.

**B. Defense Counsel Tamura Coffey's Failure to raise a Double Jeopardy Claim**

Next, Petitioner claims that his trial attorney from his third trial, Tamura Coffey, was ineffective because she failed to raise a double jeopardy claim. According to Ms. Coffey's affidavit, she reviewed the transcripts of the second trial including this Court's initial charge to the jury, the Allen charge, the reading of the verdict and the polling of the jury and concluded that "the mistrial granted by [this Court] had been providently granted and that no issue concerning the mistrial should be pursued."

7

(Tamura Coffey Affidavit at ¶ 3.)

The Double Jeopardy Clause states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend V. The Clause allows for a retrial following a mistrial provided that, "taking all the circumstances into consideration, there is a manifest necessity" for declaring a mistrial. United States v. Perez, 22 U.S. 579 (1824). As previously discussed, it has long been established that the failure of a jury to agree on a verdict is an instance of "manifest necessity." Id. at 579-80; Richardson v. United States, 468 U.S. 317, 323-24 (1984).

Furthermore, as discussed in the previous section of this Order, even if this Court committed error by failing to comply with Rule 26.3, Petitioner cannot establish that the error affected his substantial rights, because this Court's determination that the jury was deadlocked justified its declaration of a mistrial. See United States v. Olana, 507 U.S. 725, 734 (1993); United States v. See, 505 F.2d 845, 851-52 (9th Cir. 1975). Moreover, even if this Court had complied with Rule 26.3, this Court's determination that the jury was deadlocked still would have justified its declaration of a mistrial. United States v. Avnaim, 211 F.3d 1275 ((th Cir. 2000)

Therefore even if this Court were to assume that Ms. Coffey was ineffective for failing to raise a double jeopardy challenge to Petitioner's third trial, there is no prejudice as the Court's decision to declare a mistrial was supported by the fact that the jury had already received an Allen charge and had conveyed to the Court that they had reached a verdict when if fact they had not, as evidenced by polling the jury. These facts indicate a "manifest necessity" to declare a mistrial. Given that the facts support this Court's decision to declare a mistrial, notwithstanding the Court's failure to comply with Rule 26.3, there is no prejudice to Petitioner for his counsel's failure to bring a double jeopardy challenge to Petitioner's third trial. Therefore, Petitioner's ineffective assistance of counsel claim is

dismissed as he has not established the prejudice prong of the Strickland test.

**C. Defense Counsel, Tamura Coffey's, Failure to Object to Erroneous Information in the Presentence Report**

In his response brief, Petitioner concedes that he cannot show prejudice and withdraws this claim. Therefore, this specific claim of ineffective assistance of counsel is withdrawn and is no longer before the Court.

**D. Defense Counsel, Tamura Coffey's, Failure to Advise Defendant of the Safety Valve**

Petitioner contends that his trial attorney was ineffective for failing to explain the safety valve provision of 18 U.S.C. §3553(f). Petitioner argues that if Ms. Coffey had explained the provisions of the safety valve to him, he would have made himself available for the opportunity to qualify for the safety valve.

The safety valve provision of 18 U.S.C. §3553(f) requires a defendant to provide truthful information in order to obtain a lesser sentence. In order for Petitioner to establish that his attorney was ineffective for failing to explain the safety valve provision to him, Petitioner must establish that he was prejudiced by Ms. Coffey's failure to advise him of the requirements of the safety valve provision.

Petitioner has made no effort to argue the prejudice prong of the Strickland test. Moreover, Petitioner's assertion that had he been informed of the requirements of the safety valve provision, he would have "made himself available for an opportunity to qualify for the safety valve," (Petitioner's Response Brief at 11.) is disingenuous given that the safety valve requires a defendant to provide truthful information to obtain a lesser sentence. Throughout the trial, Petitioner maintained his innocence and persisted in his claim of entrapment. In fact, this Court concluded that Petitioner's

9

involvement in the drug trade was far more extensive than petitioner was willing to acknowledge:

> THE COURT: All right. I've made up my mind on this issue. I don't necessarily have to incorporate the conspiracy by a preponderance of the evidence. I'm satisfied by a preponderance of the evidence that the January '97 trip with Mr. McIntyre, Battle and Mr. Johnson was part of this overall drug operation. I'm satisfied that a year and a half later, January through March of '98, and the three - - and the conviction of March '98 that he still was involved in it. And, therefore, I deny the defendant's objection and find he's not entitled to a minor participant.
> Based on this evidence, the Court finds that it's reasonable to believe that Mr. Johnson was agreeable to, and was knowledgeable of the illegal drug trafficking activities, as were his codefendant, and, therefore, he is considered no less culpable than the other defendant in the case.

(Sentencing Transcript, July 2, 2001 at 23; Joint Appendix at 855.)

The Court's findings regarding Petitioner's involvement in drug trafficking activities are in sharp contrast to Petitioner's statement at sentencing:

> I don't deserve what I'm getting today. I'm not a drug dealer. Because it's a known fact that your mother knows best. Your mother knows you better than anybody else in this world. And my mother didn't raise no criminal My mother didn't raise no drug dealer.
> I'm hurting. Because I have been suffering for a long time in and out of court. And I have got strong community ties. They know that I'm not a drug dealer. My family knows that I'm not a drug dealer.
> I've done the right thing in my life, Your Honor. And for the Court to take my life and take me away from my son - I can't see my son grow up. I can't see him grow up anymore. I was with him every single day. This is the most I have ever been from him. I was his teacher, his coach and his best friend. I don't deserve what I'm getting today, Your Honor.

(Id. at 46-48; Joint Appendix at at 878-79.)

Petitioner was not truthful about his participation in the drug trafficking activities even at the time of sentencing. Therefore he would not have been entitled to the safety valve provision. Petitioner has not shown how he was prejudiced by his attorney's failure to explain the safety valve provision to him. Therefore, Petitioner's claim that his attorney was ineffective for failing to explain the provisions of the safety valve provision to him is denied.

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Government's Motion for Summary Judgment (Document No. 3) is **GRANTED,** and Petitioner's Motion to Vacate (Document No. 1) is **DENIED AND DISMISSED**.

**FURTHERMORE**, Petitioner's Motion to Amend, filed June 14, 2006 (Document No. 22) is **DENIED** as it is futile due to the fact that it is time barred and the amendment does not relate back.[8] **MOREOVER**, Petitioner's Motion for Release Pending Disposition of 2255 Motion filed June 8, 2006 (Document No. 21), and Motion for Trial Transcripts filed June 20, 2006 (Document No. 23) are **DENIED as moot**.

**SO ORDERED**.

Signed: July 5, 2006

Richard L. Voorhees
United States District Judge

---

[8] The Court notes that the Petitioner's Motion to Amend filed on June 8, 2006 is his fourth such motion. Petitioner's previous three motions to amend were all denied. Petitioner's proposed amended claims, all of which he was or should have been aware of at the time he filed his Motion to Vacate in April 2003, are time-barred and the subject claims cannot be construed as relating back to the allegations in his Motion to Vacate which were timely raised. See United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000) ("[t]he fact that amended claims arise from the same trial and sentencing proceedings as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c).")